# Richmond.

## THE NATIONAL VALLEY BANK OF STAUNTON V. KANAWHA BANKING AND TRUST COMPANY, ET ALS.

November 15, 1928.

Absent, Chichester and Holt, JJ.

The opinion states the case.

*William A. Pratt* and *J. M. Perry*, for the appellant.

*A. C. Gordon, Cochran & Pilson, Charles Churchman* and *Fitzhugh Elder*, for the appellees.

WEST, J., delivered the opinion of the court.

This case arises out of the suit of *J. A. Kennedy's Creditors* v. *J. A. Kennedy, et als.*, which was instituted

to subject the lands of J. A. Kennedy and wife to the payment of the liens binding thereon. The decree complained of was entered on November 22, 1927.

Among the parcels of real estate owned by J. A. Kennedy were the "Montgomery Hall" tract of 168 acres, which was composed of a tract of 119 acres and a tract of forty-nine and one-quarter acres, respectively; and the "Bear Wallow" tract containing 204 acres and twelve poles.

By deed of October 29, 1914, Pearl E. Sutler conveyed the "Bear Wallow" tract to Rudolph Bumgardner, trustee, to secure the payment of five bonds of $2,000.00 each, signed by Pearl E. Sutler and payable to J. B. O'Connell. Pearl E. Sutler later conveyed this land to H. F. Hansberger. On October 2, 1918, Hansberger conveyed the land to J. A. Kennedy.

On May 15, 1920, J. A. Kennedy and wife conveyed the tract of land to H. O. Campbell who executed a deed of trust conveying the property to H. C. Carter, trustee, to secure the payment of eight bonds aggregating $41,000.00, the deed of trust reciting that the bonds were payable to said John A. Kennedy, or order, seven of them being for $5,000.00 each and one for $6,000.00. Each grantee in the foregoing deeds, except the trustee, assumed the payment of the lien in favor of J. B. O'Connell's estate, which still remains unpaid for the principal sum of $8,000.00 and interest.

On October 27, 1920, the $41,000.00 of bonds were assigned by Kennedy to the Kanawha Banking and Trust Company, as collateral security to his note for $20,000.00, which was held by that company. There is now due upon said notes a balance of $5,500.00. The collateral bonds were not paid at or after maturity, and on June 4, 1925, they were sold at public auction, as per the provisions of the collateral agreement, and

were purchased by Kanawha Banking and Trust Company, the present owner.

On February 11, 1921, H. C. Carter, trustee in the deed of trust from H. O. Campbell, securing the payment of the eight bonds held by the Kanawha Banking and Trust Company, conveyed the property to J. A. Kennedy. This deed refers to the deed of trust from Campbell to Carter, trustee, and recites default in the payment of interest instalments, and of the first bond, "making the entire debt due and payable in full, and required the said trustee to proceed to foreclose said deed of trust."

The deed further recites that the property was sold to J. A. Kennedy by public auction, after due advertisement, at the sum of $35,000.00.

The fact that Carter, trustee, so far as the record disclosed, made no settlement of his accounts, as required by Virginia Code, section 5404, was of itself a circumstance which suggested the prudence of further investigation.

On October 30, 1922, J. A. Kennedy and wife conveyed the said "Bear Wallow" tract of land to Chas. S. Hunter, trustee, to secure the payment of a bond signed by J. A. Kennedy and payable to the National Valley Bank, or order, for the sum of $14,000.00. On October 31, 1922, the National Valley Bank discounted Kennedy's note for $14,000.00 with the $14,000.00 deed of trust bond attached thereto as collateral security.

In 1914, J. A. Kennedy and wife conveyed eleven tracts of land to Elder and Bright, trustees, to secure the payment of $40,000.00. Subsequently the debt was reduced to $8,000.00, which was assigned to R. E. Borum in 1916, and is now held by him. All of the land was released from the deed of trust lien except

the tract of forty-nine and one-quarter acres and a tract of 119 acres, which composed the "Montgomery Hall" tract. On December 6, 1916, Kennedy conveyed the forty-nine and one-quarter acre tract to E. J. Wiley. On April 2, 1917, Kennedy and wife conveyed nine tracts of land, including the 119 acre tract and a tract of seventy-five acres north of the Chesapeake and Ohio railroad, to Chas. S. Hunter, trustee, to secure the payment of a debt of $14,000.00 due the National Valley Bank. This deed expressly excepted from the conveyance the forty-nine and one-quarter acres conveyed to R. J. Wiley.

Kennedy became financially embarrassed and numerous judgments were obtained and docketed against him, which were liens upon his equity of redemption in the foregoing lands, one of which is a judgment in favor of appellee, G. A. MacQueen.

Hunter, trustee, sold the seventy-five acre tract under the terms of the trust deed. According to the records in the clerk's office, Borum then held a first lien on the 119 and the forty-nine and one-quarter acre tracts, the National Valley Bank a second lien on the 119 acre tract but no lien upon the forty-nine and one-quarter acre tract. Next to these deeds of trust liens there are certain judgment liens, including one in favor of G. A. MacQueen, which are binding upon Kennedy's equity of redemption in these lands and a second lien upon the forty-nine and one-quarter acre tract.

By consent of parties the 119 acres and the forty-nine and one-quarter acres were sold as one tract, with the agreement that the net proceeds of the sale be so allocated that $22,258.11 is allocated to the 119 acre tract as the proceeds of its sale, and $2,004.84 to the forty-nine and one-quarter acre tract as the proceeds of its sale. This money is to be distributed among the

lien creditors in accordance with their respective priorities.

The appellant, National Valley Bank of Staunton, makes two assignments of error to the decree complained of.

The first assignment is: "In its distribution of the fund arising from the sale of the Montgomery Hall tract, consisting of two parcels, the court should have applied (1) all of the proceeds of sale of the forty-nine acre parcel, which was not subject to the National Valley Bank's lien, toward the payment of the prior Borum lien binding it, exonerating to that extent the proceeds of sale of the 119 acre parcel, which was subject to, first, the Borum lien, and, second, the bank's lien; (2) the proceeds of the 119 acre parcel to the payment of the residue of the Borum lien, and then, of the bank's lien; and should have overruled the exceptions of Worthington Hardware Company, Incorporated, and G. A. MacQueen in that respect."

This assignment involves the equitable doctrine of the marshalling of assets. This doctrine is applied only where one creditor has a lien against two funds or estates, belonging to the same person, and a junior lienor has a lien against only one of the same funds or estates. The two properties must belong to the same person at the time the person who is invoking the doctrine secured his lien. Marshalling will never be enforced to give a creditor a lien on land on which he has never had a lien, by depriving a third party of a statutory lien.

In *Harrington* v. *Taylor*, 176 Cal. 802, 169 Pac. 690, the court said: "But a lien claimant may invoke this equitable principle of marshalling assets only when it will benefit him without injuring others and if this cannot be done then equity will but follow the law. The

principle of marshalling assets cannot be invoked or applied so as to defeat statutory rights."

■ Under Virginia Code, section 6470, MacQueen is given a statutory lien for the amount of his judgment against the forty-nine and one-quarter acre tract which the application of the doctrine of marshalling would destroy.

■ In 18 R. C. L., section 11, page 463, the law is stated thus: "As the principle of marshalling originated in courts of equity for the very purpose of preventing injustice, it is not surprising to find quite frequently general statements by the courts to the effect that they will not interfere when such interference would work injustice either to the common debtor or to other persons, or where, on account of any special facts, it would be inequitable to apply the principle of marshalling. In other words, the equity to marshall assets will not displace or impair an equal or superior equity of another person."

*Conrad* v. *Harrison*, 3 Leigh (30 Va.), 532, relied on by appellant, is distinguishable from the instant case. Carr, J., in the course of his opinion in that case, said: "Harrison and Cravens then having this seventy-five acres between them and Brock's lien when they took their deed, is there any act or omission of theirs since which could deprive him of this protection? None such is relied on. * * * Harrison and Cravens took their deed, knowing they had the seventy-five acres between them and danger; Conrad took the seventy-five acres with the same knowledge, a knowledge calculated, essentially, to influence the contract of each." Thus it appears that "Harrison and Cravens took their deed *knowing that they had* seventy-five acres between them and danger," and that they could, under the equitable doctrine of marshalling, subject the seventy-

five acre tract first, before going against the residue of the 360 acre tract. But in the case at bar the National Valley Bank could not, when it took its lien, have required Borum to go against the forty-nine and one-quarter acre tract, because that tract was then the property of Wiley and not the property of Kennedy.

■ Discussing the doctrine of marshalling of assets, the Virginia Special Court of Appeals, in *Kidwell* v. *Henderson*, decided May 24, 1928, 150 Va. 829, 143 S. E. 336, after distinguishing *Conrad* v. *Harrison*, *supra*, from the Kidwell-Henderson case, said: "The appellees not being doubly secured upon funds belonging to the common debtor, but they and the appellant each having a lien upon separate and distinct properties, the appellant has no equity that warrants the application of the doctrine of marshalling securities; therefore, the learned chancellor was right in overruling his motion, and the decree is affirmed." This case is clearly in point and is practically "on all fours" with the case at bar.

Appellant is not entitled to have the assets marshalled, and this assignment is without merit.

The second assignment of error is: "The corporation court should have sustained the first seven exceptions of the National Valley Bank to the master commissioner's report, filed September, 1927, and should have held that the recitals of the deed of H. C. Carter, trustee, to J. A. Kennedy, conveying the Bear Wallow farm, were *prima facie* true, and that Hunter and the National Valley Bank, purchasers for value from J. A. Kennedy, used reasonable diligence and were entitled to rely upon the truth of such recitals; that the said Hunter, trustee, and said bank were without notice through any matter of record or otherwise of any infirmity of the said Kennedy's title, or of default on

the part of H. C. Carter, trustee, or of Kennedy's assignment of the Campbell-Kennedy bonds secured in the trust deed of Campbell to Carter, trustee; and that the said bank is entitled to priority to any claim of the Kanawha Banking and Trust Company upon the proceeds of sale of said Bear Wallow farm.''

■ ■ This assignment involves a controversy as to the priority of liens between the appellant bank and the Kanawha Banking and Trust Company upon the proceeds of the sale of the Bear Wallow tract of land. J. A. Kennedy and wife conveyed this land to H. O. Campbell on May 15, 1920. Thereafter Campbell executed a trust deed conveying the property to H. C. Carter, trustee, to secure the payment of eight bonds, aggregating $41,000.00, the deed reciting that the bonds were payable to John A. Kennedy, or order. The bonds were assigned and placed by him with Kanawha Banking and Trust Company as collateral security for the payment of Kennedy's note for $20,000.00.

On February 11, 1921, H. C. Carter, trustee in the deed of trust from H. O. Campbell, securing the payment of the eight bonds aggregating $41,000.00, which were assigned to and held by the Kanawha Banking and Trust Company, foreclosed that deed of trust by making public sale of the property, at which sale J. A. Kennedy became the purchaser at $35,000.00. The deed from Carter, trustee, conveying the property to Kennedy recites that the deed of trust provides that upon default in the payment of interest instalment and of the first bond, shall ''make the entire debt due and payable at the option of J. A. Kennedy, the holder of said debt, who exercised said option and declared the said debt due and payable in full, and required the

said trustee to proceed to foreclose the said deed of trust."

On October 30, 1922, Kennedy and wife conveyed to Chas. S. Hunter, trustee, the "Bear Wallow" tract to secure the payment of a bond for $14,000.00 payable to National Valley Bank. On October 31, 1922, the bank discounted Kennedy's note with the deed of trust note for $14,000.00 attached thereto as collateral security and placed the same to the credit of J. A. Kennedy.

The record sustains the following statement contained in the court's decree: "It appearing to the court from the pleadings, evidence and said (commissioner's) report that John A. Kennedy had hypothecated to the then Kanawha Banking and Trust Company all of the bonds payable to said Kennedy, secured under the trust deed of Campbell, conveying the "Bear Wallow" lands to H. C. Carter, trustee, and was not the holder of said bonds when he requested Carter, trustee, to execute said trust deed or at any time thereafter, and that said bonds were not credited with his purchase money arising from Carter, trustee's sale under said trust deed, pursuant to Kennedy's said request, notwithstanding the recitals of the deed of Carter, trustee, following such sale, purporting to convey the "Bear Wallow" lands to said Kennedy, purchaser, and that said Banking and Trust Company had no knowledge or notice of said sale, the court is of the opinion that said sale and the deed of H. C. Carter, trustee, conveying said lands to J. A. Kennedy in pursuance of such sale were and are and each of them was and is null, void and of no effect."

The deed from Carter, trustee, to Kennedy was made in execution of the deed of trust from Campbell

to Carter, trustee, and shows on its face that the trustee's sale had been conducted in accordance with the terms of the trust deed, and under section 6196 of the Code the deed given by the trustee to the purchaser is *prima facie* evidence that the "sale was regularly made and that the other recitals in such deed or conveyance are true."

It is clear that the deed from Kennedy to Hunter, trustee, to secure money due the National Valley Bank, only conveyed the equity of redemption, and was subordinate to the deed from Sutler to Bumgardner, trustee, dated October 29, 1914, conveying the "Bear Wallow" tract to secure the payment of money due O'Connell.

The legal title to the "Bear Wallow" land is vested in Bumgardner, trustee, and the claims which are being considered under this assignment rest upon conflicting equities. The equity of the Kanawha Banking and Trust Company arose under the deed from H. O. Campbell to H. C. Carter, trustee, and ante-dates the deed of trust from J. A. Kennedy to Hunter, trustee, under which the equity arose in favor of the National Valley Bank. The equity of the Banking and Trust Company being superior thereto, it is entitled to preference over the equity of the National Valley Bank. Besides, if the equities are equal, the one oldest in point of time is given preference.

In 1 Story's Equity Jurisprudence (11th ed.), section 64-d, we find this: "But, even when the title of each party is purely equitable, it does not always follow that the maxim admits of no preference of one over the other. For where equities are in other respects equal, still another maxim may prevail, which is, '*qui prior est in tempore, potior est in jure;*' for precedency

in time will, under many circumstances, give an advant-age or priority in right. Hence, when the legal estate is outstanding, equitable incumbrances must be paid according to priority of time. And whenever the equities are unequal, there the preference is constantly given to the superior equity."

For the reasons stated, we think the decree appealed from is right and it will be affirmed.

*Affirmed*